UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Deannda Furr, | ) | Civil Action No. 7:17-cv-02660-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| West Coast Distributing, Inc., and William | ) | |
| Robinson | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants West Coast Distributing, Inc. ("WCD") and Williams Robinson's ("Robinson") (collectively "Defendants") motion for partial summary judgment (ECF No. 64). For the reasons set forth in this Order the motion is denied.

## BACKGROUND

On September 22, 2014, Plaintiff Deannda Furr ("Plaintiff") was driving south on I-85 in South Carolina. Defendant Robinson, an employee of WCD, was driving a commercial truck south on I-85 when his truck collided with the rear of Plaintiff's vehicle in Cherokee County, South Carolina. Plaintiff alleges Robinson was driving too fast for conditions, drove distracted, and lost control of his truck. Plaintiff further asserts that Robinson was acting within the course and scope of his employment with WCD at the time of the collision.

In her first cause of action, entitled "Negligence/Gross Negligence/Recklessness," Plaintiff alleges Robinson was negligent, careless, reckless, and/or grossly negligent in at least one of the following ways: (a) choosing not to keep his vehicle under proper

control; (b) choosing not to keep a proper lookout; (c) choosing to drive distracted; (d) choosing to drive too fast for conditions; (e) choosing not to control his vehicle's speed to avoid colliding with another vehicle; (f) choosing to operate the vehicle aggressively; (g) choosing not to apply his brakes in a proper manner; and (h) choosing not to use the degree of care and caution that a reasonably prudent person would use under the circumstances. (Compl. ¶ 16, ECF No. 1-1 at 4.) Moreover, plaintiff alleges that WCD was negligent, careless, reckless and/or grossly negligent in at least one of the following ways: (a) choosing to hire inadequately trained and unsafe personnel; (b) choosing not to adequately train personnel; (c) choosing not to adequately manage personnel; (d) choosing not to adequately supervise personnel; (e) choosing to retain unqualified, unsafe personnel; (f) choosing not to develop adequate safety policies and procedures; (g) choosing to violate federal and/or state regulations related to the operation of commercial motor vehicles; (h) choosing to allow employees, agents, and/or servants to operate commercial motor vehicles despite knowledge of their inability to safely do so; and (i) in such other particulars as may be found through discovery or trial. (*Id.* ¶ 17.)

In her second cause of action, entitled "Negligence Per Se Based Upon S.C. Code Ann. § 56-5-1520," Plaintiff alleges Robinson, as driver of a vehicle on a highway, had a statutory duty under S.C. Code § 56-5-1520 not to drive at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, which duty he breached when he drove his truck at an unreasonable and imprudent speed, colliding with Plaintiff. (*Id.* ¶¶ 20–22.) She further contends that Robinson's breach of his statutory duty gives rise to liability on the part of his employer, WCD. (*Id.* ¶ 25.)

In her prayer for relief, Plaintiff requests: (a) that she recover a judgment against Defendants in an amount sufficient to compensate her for her actual damages; (b) that she recover a judgment for an amount of punitive damages as authorized by law; (c) that she recover all costs associated with this action; and (d) that she recover such other relief as the Court may deem just and proper. (*Id.* at 5.)

Defendants removed this action from the Cherokee County Court of Common Pleas on October 3, 2017. (ECF No. 1.) The case was reassigned to the undersigned on March 13, 2019. (ECF No. 54.) Defendants filed their motion for partial summary judgment on June 17, 2019. (ECF No. 64.) In the motion, Defendants contend that they are entitled to partial summary judgment on Plaintiff's prayer for punitive damages and as to any evidence and medical expenses related to stem cell therapy received by Plaintiff. (*Id.* at 1–2.) Plaintiff responded on July 11, 2019 (ECF No. 67) and Defendants replied on July 23, 2019 (ECF No. 70). The matter is ripe for disposition and the Court now issues the following ruling.

## **LEGAL STANDARD**

**Summary Judgment**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

Defendants assert that they are entitled to summary judgment on two issues. First, they argue that Plaintiff has failed to set forth any evidence that Defendants acted in a willful, wanton, or reckless manner with respect to the allegations in the complaint and that punitive damages are consequently not applicable to this action. (ECF No. 64 at 1.) Second, they contend that Plaintiff has failed to set forth any evidence that the stem cell therapy she received was reasonable and necessary, and that all evidence concerning such treatment and related medical expenses "must be dismissed." (*Id.* at 2.)

**Punitive Damages**

In an action arising out of a motor vehicle accident on Interstate 95, the South

Carolina Supreme Court set forth the following rules regarding punitive damages:

> Punitive damages are recoverable where there is evidence the defendant's
> conduct was reckless, willful, or wanton. *Cartee v. Lesley,* 290 S.C. 333,
> 350 S.E.2d 388 (1986). Recklessness is the doing of a negligent act
> knowingly; it is a conscious failure to exercise due care, and the element
> distinguishing actionable negligence from a willful tort is inadvertence.
> *Berberich v. Jack,* 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011). The
> terms "willful" and "wanton" when pled in a negligence action are
> synonymous with "reckless" and import a greater degree of culpability than
> mere negligence. *Id.* at 288, 709 S.E.2d at 612. "Evidence that the
> defendant's conduct breached this higher standard entitles the plaintiff to a
> charge on punitive damages." *Id.* (quoting *Marcum v. Bowden,* 372 S.C.
> 452, 458 n. 5, 643 S.E.2d 85, 88 n. 5 (2007)); *see also* S.C. Code Ann. §
> 15–33–135 (2005) ("In any civil action where punitive damages are claimed,
> the plaintiff has the burden of proving such damages by clear and
> convincing evidence.").
>
> "Ordinarily, the test is whether the tort has been committed in such a
> manner or under circumstances that a person of ordinary reason or
> prudence would have been conscious of it as an invasion of the plaintiff's
> rights." *Cartee,* 290 S.C. at 337, 350 S.E.2d at 390. "The test may also be
> satisfied by evidence of the causative violation of an applicable statute." *Id.*
> "However, before punitive damages may be submitted to the jury, there
> must be evidence the statutory violation proximately contributed to the
> injury." *Id.* "Ordinarily, whether or not the statutory violation contributed as
> a proximate cause to the injury is a question for the jury." *Id.*

*Fairchild v. S.C. Dep't of Transp.*, 727 S.E.2d 407, 411–12 (S.C. 2012).

Defendants argue that, while there are existing disputes over minor factual details

in this case, there is simply no clear and convincing evidence that Defendants acted in a

reckless, willful, or wanton manner. (ECF No. 64-1 at 9.) Defendants contend that the

vehicle accident was relatively minor in that both parties pulled their vehicles onto the

shoulder and awaited law enforcement, Plaintiff and her mother both declined Robinson's

offer to call an ambulance, Plaintiff and her mother were walking around the accident

scene with no complaints or apparent injuries, and both vehicles were drivable from the scene and did not require towing. (*Id.* at 4, 9.) Defendants further contend that Robinson was a properly licensed, adequately trained, and qualified operator of the tractor-trailer, that he was not under the influence of any drugs, alcohol, or prescription medications at the time of the accident, that he was not on his cell phone at the time, that he was paying attention to the roadway and never lost control of the tractor-trailer, and that he was not speeding at the time. (*Id.* at 9.)

In response, Plaintiff disputes the characterization of the collision as "minor," in that it caused significant damage to the rear of the Plaintiff's vehicle, left an imprint of the truck's license plate on the vehicle's rear bumper, and prevented the trunk from opening. (ECF No. 67 at 1.) Plaintiff notes the police report estimated Robinson's tractor-trailer struck Plaintiff's vehicle at a speed of 65 mph. (*Id.*) Plaintiff cites deposition testimony from Robinson in which he stated he was following Plaintiff at approximately 700 to 800 feet, and from WCD Safety Manager Keith Buchanan who stated, "That's ample stopping distance in most any conditions just based on my experience." (*Id.* at 3.) When asked why, if Robinson was keeping a safe speed, a proper lookout, and doing everything correctly, Robinson still ran into the back of Plaintiff, Mr. Buchanan responded, "I cannot— I cannot answer that." (*Id.*) Plaintiff spends not insignificant portions of her brief discussing Robinson's refusal to admit responsibility for the collision and Robinson's driving record and criminal record. (*See id.* at 2–4.) With respect, the Court would note that this discussion is irrelevant to the analysis of whether there is sufficient evidence of record to sustain a punitive damages award. Plaintiff explains that approximately one month after the collision, Plaintiff's counsel sent a spoliation letter to Robinson, Richey Brothers

(owner of the truck driven by Robinson and leased to WCD), and Cherokee Insurance Company, yet Defendants have not been able to locate or produce any files related to Robinson, including his driver's qualification record or documentation of any post-accident drug testing. (*Id.* at 4–5.) Plaintiff notes a discrepancy between WCD's 30(b)(6) witness testimony, which asserts there was no post-accident drug testing, and Robinson's deposition testimony, in which he stated he thought he had gone for a drug and alcohol test after the crash. (*Id.* at 5–6.) Moreover, Plaintiff highlights evidence that Mr. Buchanan lacked prior experience and training as a safety manager, and that despite Mr. Buchanan's insistence that he always created an accident file including his opinion about whether the driver was at fault and whether the company could have done anything differently, as well as WCD's own insurance company instructing them to retain the documents referenced in the spoliation letter, no such file has been found or produced. (*Id.* at 6–7.)

The Court agrees with Plaintiff that she has set forth sufficient evidence to create a genuine issue of material fact as to reckless conduct that could sustain a punitive damages award. In *Fairchild v. S.C. Dep't of Transp.*, the trial court granted the defendants' motion for a directed verdict as to the plaintiff's punitive damages claim. 727 S.E.2d at 410. The Court of Appeals found that the grant of a directed verdict on the punitive damages claim was error "as the evidence and its reasonable inferences created a factual question as to whether [the commercial truck driver involved in the accident] had acted recklessly." *Id.* Addressing a violation of the same traffic statute at issue in this case, S.C. Code § 56-5-1520, the South Carolina Supreme Court noted that the Court of Appeals cited long-standing South Carolina precedent when it held "the violation of a

statute constitutes negligence per se, and negligence per se is evidence of recklessness and willfulness that requires submission of the issue of punitive damages to the jury." *Id.* at 411 (citing *Wise v. Broadway*, 433 S.E.2d 857 (1993)). The Supreme Court affirmed, finding, where there was evidence that the commercial truck driver might have violated § 56-5-1520(a) (circumstances requiring a reduction in speed) and S.C. Code § 56-5-1930(a) (following too closely), and "an inference that the violations of these statutes were the proximate cause of the accident," that the plaintiff's "claim for punitive damages should have been submitted to the jury." *Id.* at 413. In the instant case, there is sufficient evidence to raise a genuine issue of fact as to whether Robinson was traveling too fast for conditions in violation of § 56-5-1520. Robinson's deposition testimony was that he maintained a distance of more than two football fields but was still unable to stop his vehicle in time to avoid a collision with Plaintiff. Mr. Buchanan could not explain why, if Robinson was following at that distance and at a proper speed, Robinson was unable to stop in time. Drawing all permissible inferences in Plaintiff's favor, *see Diebold*, 369 U.S. at 655, this evidence supports the inference that Robinson was either following more closely than he testified or that he was traveling in excess of a reasonable speed. Thus, a genuine dispute remains regarding Plaintiff's negligence *per se* claim, which could support a finding that Robinson acted recklessly and an associated punitive damages instruction. *See Fairchild*, 727 S.E.2d at 411. Accordingly, Defendants' motion for partial summary judgment on this basis is denied. The Court need not discuss the remainder of Plaintiff's arguments in opposition to summary judgment on the punitive damages issue.

**Stem Cell Evidence and Medical Expenses**

"In a personal injury case . . ., the elements of damages potentially recoverable

include past and future medical expenses, past and future pain and suffering, past and future loss of income and earning power, disfigurement, loss of enjoyment of life, and loss of family services." *Holt v. Brown*, 185 F. Supp.3d 727, 738 (D.S.C. 2016) (citations and quotation marks omitted). "The general rule is that in personal injury actions the plaintiff may recover for the necessary and reasonable expense caused by the injury such as amounts necessarily paid for medicine, medical attendance, hospital expense and care and nursing." *Sossamon v. Nationwide Mut. Ins. Co.*, 135 S.E.2d 87, 91 (S.C. 1964) (citations omitted).

Defendants contend that Plaintiff's stem cell therapy is not a reasonable or necessary treatment, and that the related expenses incurred by Plaintiff are, likewise, not reasonable or necessary. (ECF No. 64-1 at 8.) Defendants point to the fact that Plaintiff's own doctor admitted the stem cell therapy in question lacks long-term studies regarding its efficacy and has only anecdotal success. (*Id.*) Defendants argue, "There is simply no way to know whether the Plaintiff is actually benefiting from the therapy, other than from her own subjective history; but even then, Plaintiff's own doctor admits that there is a placebo effect with the stem cell therapy." (*Id.*) They point out that there is no empirical evidence to indicate that the stem cells will target the desired locations, and assert, "Given this, clearly the Plaintiff's stem cell therapy is not the type of medical treatment that is reasonable and necessary, and thus, Plaintiff cannot recover for any damages related to this treatment or medical expenses incurred as a result of this treatment." (*Id.*) Finally, Defendants contend that any expert testimony concerning Plaintiff's stem cell therapy does not withstand scrutiny under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). (*Id.* at 9.)

Plaintiff responds that she has incurred at least $270,000 in medical expenses as a result of the accident, including expenses for stem cell treatment because she was not getting adequate relief with other medical treatment. (ECF No. 67 at 7.) Plaintiff cites Dr. Anthony Clavo's deposition testimony regarding the purpose of the stem cell treatment and that, at one point, Plaintiff reported a 25 percent improvement in her symptoms as a result. (*Id.*) Plaintiff further cites Dr. James Chappuis' testimony that the type of stem cell treatment Plaintiff received was being done all over the country even though some insurance companies will not pay for it and the evidence for its efficacy is anecdotal. (*Id.*) Plaintiff argues that Dr. Chappuis' testimony that the stem cell treatment is in its infancy, but supported by a fair amount of anecdotal evidence, in conjunction with Dr. Clavo's testimony describing the underlying science behind the procedure and why it should work, is sufficient to create jury question as to whether the treatment was reasonable and necessary. (*Id.* at 10.)

The Court agrees with Plaintiff that there is sufficient evidence to create a genuine issue of fact regarding the reasonableness and necessity of the stem cell therapy. Dr. Chappuis testified that the stem cell therapy was an option Plaintiff's doctors had given her as a step along the treatment continuum prior to surgery, "[a]nd then she's had successful outcomes with it, so we've offered it to her again." (ECF No. 67-15 at 9.) Of course, this ruling in no way serves as commentary on the strength of Plaintiff's assertions that the stem cell therapy is reasonable and necessary. It is only to say that the question is one for the jury's determination and not for the Court at the summary judgment stage. Finally, Defendants' challenge to any potential expert testimony related to the stem cell therapy is premature given that there has not been any clarification of what expert

testimony Plaintiff's physicians might offer. At such time as it becomes appropriate, the Court would welcome a motion in limine for an evidentiary ruling in advance, but would expect significantly more detail and analysis of the *Dabuert* issues.

## CONCLUSION

After careful consideration of the parties' briefs, the associated record, and the applicable law, the Court hereby DENIES Defendants' motion for partial summary judgment (ECF No. 64).

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

June 1, 2020
Charleston, South Carolina